Merrimack,
June, 1896.

CONCORD & MONTREAL RAILROAD *v.* BOSTON & MAINE RAILROAD.

The duration of the binding force of an award under Laws 1855, c. 1666, fixing the rate of compensation to be paid by a railroad corporation for the use of tracks of a connecting road, was not extended or affected by Laws 1858, c. 2125.

The payment and receipt of the rate of compensation established by such award after the expiration of judgment thereon, without legal objection, is binding upon the parties; but such implied contract is terminated by notice of a proceeding for a readjustment of rates, under P. S., c. 157, s. 12.

The referees appointed in such proceeding have authority to determine the rate of compensation to be paid from the time the previous award ceased to be operative; and their report is not sufficiently definite and certain if it fails to state whether the rate established by them is to take effect from the date of the service of notice, or from the time their report was filed.

PETITION, under P. S., c. 157, s. 12, for the adjustment and determination of unsettled claims and accounts relative to the use by the plaintiffs of the tracks of the Eastern Railroad in Portsmouth, of which the defendants are lessees, and of the rates and

terms for such use hereafter. On a similar petition in 1865, the rate was fixed at five cents per ton.

*Frank S. Streeter*, for the plaintiffs.

*Oliver E. Branch, John S. H. Frink,* and *Charles B. Gafney,* for the defendants.

BLODGETT, J. The primary question in this case is whether the judgment rendered upon the referees' award of 1865 was limited in its operation to any particular period or time; or whether it is binding and conclusive until a judgment is rendered in the present proceeding.

The legislative act approved June 27, 1859 (Laws 1859, *c.* 2284), authorized the Concord & Portsmouth Railroad to enter upon and use certain portions of the track of the Eastern Railroad in Portsmouth, " subject, as to rates of compensation, to all the liabilities and conditions, and entitled to all the benefits and privileges, of the provisions contained in chapters 1666 and 1847 of the Pamphlet Laws." Chapter 1666, Laws 1855, made it obligatory upon all railroads chartered by this state, in whole or in part, and then in use, to draw over their roads the cars, passengers, and freight of connecting roads for such compensation as might be fixed by the legislature, or by its authority, and then provided (*s.* 3), in case of disagreement between . connecting roads, " either party may, on giving the other three months notice, apply to the superior court, or any two justices thereof, who are disinterested, in vacation, for the appointment of an impartial and disinterested board of referees, and the superior court, or said justices, on due notice to the opposite party, shall appoint such board of referees to adjust and determine the rates of compensation for transportation, and all matters of connection between said roads, and the said referees, after giving due notice to the parties, and after full hearing of the same, shall make their award thereon, which shall be valid and binding until three months after the close of the next session of the legislature, and for such further time, not exceeding one year, as said referees may fix, unless sooner altered by the legislature "; and (*s.* 4) " all unsettled claims or accounts for or on account of such transportation, which may exist at the time of the passage of this act, or at the time of the appointment of any such board of referees, shall, in case the parties are unable to agree in respect to the same, be heard and determined by a board of referees, appointed on petition of either party, in the manner prescribed in the third section." And in 1856 (Laws 1856, *c.* 1847), the provisions of *c.* 1666 were extended so as to apply to all connecting railroads lawfully chartered, " notwithstanding neither of said connecting roads are by law authorized to unite with or enter upon and use the other."

In 1858 (Laws 1858, c. 2125), c. 1666 was further amended by an act providing (s. 2), " In any case where any award shall hereafter be made by referees appointed under section three of the act to which this act is an amendment, such award shall be returned to any subsequent law term of the supreme judicial court, for examination, acceptance, recommitment, and final judgment thereon, notice of the return thereof having been first given by the referees to the parties in interest." But while the effect of this amendment was to make the award subject to the control and final judgment of the court, we do not think that the duration of its binding force, as fixed by the original act of 1855, was extended or affected.

Taking this to be so, the award of 1865, upon which judgment was rendered at the December law term, 1866 (*Railroad* v. *Railroad*, 47 N. H. 108), ceased to be binding on the parties at the expiration of the time prescribed in the act of 1855, and there was no longer any obligation upon either party to pay or to receive the five cent rate established by the award; but so long as that rate continued to be paid and received without legal objection, the parties would of course be bound by it.

Such objection having been duly made by the plaintiffs on July 3, 1891, by service of notice on the defendants, the then existing implied contract between the parties as to the rate of compensation was terminated, and the amount which the plaintiffs should thereafter pay the defendants became a matter for legal adjudication under s. 12, c. 157, P. S., enacting that if connecting railroad corporations cannot agree upon the terms and conditions of making the interchange of their business, or in regard to the accommodations to be furnished at their junction point, " the supreme court, upon petition of either party, after notice to the other, shall hear the parties and shall determine all questions arising between them in regard to such interchange and accommodations, having reference to the convenience and interests of the corporations and of the public."

Subsequently, and in accordance with the notice of July 3, the plaintiffs filed their petition at a trial term of the court for this county, asking for the appointment of a board of referees " who shall hear the parties, and adjust and finally determine all unsettled claims or accounts relative to the use of said Eastern Railroad Company's tracks, and adjust and determine the rates and terms for such use hereafter, according to the provisions of our statutes " ; and at the following term, after hearing had, the petition was sent to referees agreed upon by the parties, who filed their report September 24, 1894, the material part thereof being as follows : " We determine that the Concord & Montreal Railroad, as the operator of the Concord & Portsmouth Railroad, shall pay to the Boston & Maine Railroad, lessee of the Eastern

Railroad in New Hampshire, for the use of the tracks of said Eastern Railroad between the terminus of said Concord & Portsmouth Railroad in Portsmouth and the side track leading to Rindge's wharf, two and three fourths cents ($0.02¾) per ton for all freight hauled over said Eastern tracks by said Concord & Montreal Railroad."

Upon this finding it is contended by the plaintiffs that, in view of the fact that no contract can be inferred to have existed for the payment of the five cent compensation since their notice of July 3, 1891, the rate of compensation since that date must be regarded as a disputed and unsettled claim and one of the matters referred to the commission making the finding and within their authority, and hence when judgment shall issue upon the report, the rate of compensation established by it should take effect from and after July 3, 1891; while the defendants contend that if any judgment can issue upon the report as it now stands, it can only be a judgment for the future,— not only because the finding says nothing about the compensation to be paid during the time intervening between the notice and the award, but because it does say in express terms that the plaintiffs " shall pay . . . two and three fourths cents per ton," etc., the plain meaning of which is that they shall pay it from and after the time of the making of the award.

In view of these contentions, as well as in view of our conclusion that the judgment of 1866 had ceased to be operative at the time of the filing of the plaintiffs' notice, so that the proper rate of compensation since that time would be one of the matters coming within the authority of the referees, we think sufficient uncertainty exists relative to the true construction of the report as to require its recommitment for a specific finding by the referees whether the two and three fourths cent rate is to take effect from July 3, 1891, or from the date of the filing of their report, September 24, 1894.

*Recommitted accordingly.*

CHASE, J., did not sit: the others concurred.